**UNITED STATES of America,
Appellee,**

v.

**Elias A. KENAAN, Appellant.**

**No. 73–1094.**

United States Court of Appeals,
First Circuit.

April 26, 1974.

Michael O. McCarter, Boston, Mass., with whom Michael S. Field, and Field,

Rudnitsky, Mullane & Schultz, Boston, Mass., were on brief, for appellant.

Lauren S. Kahn, Atty., with whom James N. Gabriel, U. S. Atty., John R. Tarrant, Special Atty., and Peter M. Shannon, Jr., Atty., Dept. of Justice, were on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Appellant, convicted on two counts of unlawful receipt, concealment, and possession of approximately .293 grams of cocaine, in violation of 18 U.S.C. § 545 and 21 U.S.C. § 844(a), contends on appeal that his conviction should be set aside because of alleged errors which included the denial of appellant's motion to suppress testimony concerning the results of an examination of appellant's hands for traces of fluorescent powder, conducted with an ultraviolet light, before appellant was arrested, and an instruction to the jury which permitted the jury to employ an unconstitutional statutory presumption in 18 U.S.C. § 545.

Evidence was introduced by the government at trial to show that customs agents had discovered cocaine inside a packet within a parcel postmarked from Peru and addressed to an individual, other than appellant, at appellant's address. Most of the cocaine was then removed by the agents, and soap powder substituted. The new mixture, containing less than three per cent cocaine, was put back into the packet, the packet was dusted with fluorescent powder, and was replaced in the parcel. After the reconstituted parcel arrived in Boston, a post office notice card was delivered to appellant's address. Appellant thereupon presented the card at the mail station and asked for the parcel, but was told that the parcel was unavailable, and that he should consult with the post office

superintendent. Appellant then left the mail station. The next day the parcel was delivered to appellant's address. Appellant agreed to receive the parcel, although he stated that the parcel was not addressed to him, and that the addressee picked up his mail at that address periodically.

Government agents then obtained a warrant to search appellant's apartment. There they found a small spoon, which appeared to have some residue upon it, but did not find the parcel. The residue was subsequently analyzed to contain cocaine. The parcel itself was discovered, unwrapped and without the cocaine-soap powder mixture, within a plastic garbage bag which agents had observed being placed on the sidewalk outside the building by the building landlord. The agents then used an ultraviolet lamp to inspect appellant's hands for traces of fluorescent powder. After the test revealed traces of the powder, appellant was placed under arrest.

■ Appellant contends that the results of the inspection of his hands should have been suppressed at trial, since the inspection was, in effect, a personal search unauthorized by the warrant to search the premises. There can be little doubt that an inspection of one's hands, under an ultraviolet lamp, is the kind of governmental intrusion into one's private domain that is protected by the Fourth Amendment. Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). If the reach of the Fourth Amendment extends to fingerprinting, Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), and a search of one's clothing or personal effects, United States v. Micheli, 487 F.2d 429 (1st Cir. 1973), it should certainly encompass a detailed inspection, by special instrument, of one's skin.[1]

---

1. The district court, in denying appellant's motion to suppress, relied upon United States v. Richardson, 388 F.2d 842 (6th Cir.

1968), in which the court declined to characterize an examination by ultraviolet light, similar to the present one, as a search with-

It is no answer for the government to argue that the ultraviolet inspection actually protected appellant's privacy by obviating the necessity of a physical search of his person, since the search warrant gave the government agents no authority to conduct a personal search. *Micheli, supra.* The protection afforded an individual by the Fourth Amendment would be eviscerated if, under authority of a warrant to search premises, government agents could scan an individual's body with sensitive instruments capable of picking up the most minute or intimate object lodged thereon.

The government urges, alternatively, that even if the Fourth Amendment applies, the search was justified as being incidental to a lawful arrest. Although appellant had not been placed under arrest when the search was conducted, it has been held that a personal search is justifiable as incidental to arrest if an arrest is made immediately after the search and if at the time of the search there was probable cause to arrest. Bailey v. United States, 128 U.S.App.D.C. 354, 389 F.2d 305, 308 (1968). See also Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); United States v. Brown, 150 U.S.App.D.C. 113, 463 F.2d 949 (1972). These criteria must, of course, be strictly construed to avoid the possibility that the search is aimed at retrieving enough evidence to provide probable cause for arrest, or that the arrest is simply a pretext for the search. See United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932).

Here the government knew that the parcel bore appellant's address and that the appellant had attempted to retrieve it long before agents entered the premises. Of course, law enforcement officers may postpone arrest in the hope that they may strengthen their case by uncovering further evidence, "[b]ut every time there is delay in the making of the arrest and there is a search made as incidental to the arrest, the law enforcement officers take the risk that they will be charged with using the arrest as a mere pretext for the search." Carlo v. United States, 286 F.2d 841 (2d Cir. 1961), cert. denied, 366 U.S. 944, 81 S. Ct. 1672, 6 L.Ed.2d 855 (1961).

The remaining items of evidence gathered prior to inspection of appellant's hands—the spoon with some residue on it and the discarded parcel in the garbage bag outside—provided some circumstantial evidence. Despite the characterization in the government's brief we are not able to ascertain from the record whether the spoon was of the type uniquely associated with the use of cocaine or was of a garden variety type. If the evidence were of the former nature, the government's claim of probable cause would be more persuasive. We make no final determination on the point, however, since appellant's next contention requires reversal. On remand, the district court will have further opportunity to decide whether there was probable cause for arrest before inspection of appellant's hands. Factors to be considered might include whether or not the spoon and its residue had unique characteristics which would signal narcotics activity.

We turn to appellant's second contention which, as noted, we find dispositive of his appeal. 18 U.S.C. § 545 under which appellant was convicted, provides, in part, that "whoever knowingly . . . smuggles . . . into the United States any merchandise that should have been invoiced . . . or . . . knowingly imports . . . merchandise contrary to law" shall be

---

in the meaning of the Fourth Amendment. But the *Richardson* court's opinion is inconclusive. No reason is offered to support its assertion. The court cited only Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), which seems to offer support for the opposite conclusion, since there the Supreme Court held that a withdrawal of defendant's blood, for the purposes of examnation, came within the ambit of Fourth Amendment protection. Finally, the court in *Richardson* chose to rest its holding upon appellant's consensual waiver of Fourth Amendment rights.

guilty of a felony. It also provides that "[p]roof of defendant's possession of such goods, unless explained to the satisfaction of the jury, shall be deemed evidence sufficient to authorize conviction for violation of this section."

■ In Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), the Supreme Court struck down the statutory presumption in 21 U.S.C. § 174, which imputed knowing importation of cocaine from a mere unexplained showing of possession of cocaine. The Court reasoned that since more cocaine is lawfully produced in this country than is smuggled into this country, the statutory presumption could not satisfy the "more-likely-than-not" standard for validating statutorily authorized inferences enunciated in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). See Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973).[2] Precisely the same presumption, when applied to cocaine, is featured in 18 U.S.C. § 545, except that here the government has the added burden of showing illegal importation. If the presumption could not pass constitutional muster in one part of the Code, it cannot in another.

■ The government contends, in effect, that since the court instructed the jury that each element of the crime had to be proven beyond a reasonable doubt, the possible effect of any unconstitutional inference within the statute would be eliminated. But the court also familiarized the jury with the statute itself, and alerted the jury to the statutory presumption contained therein: "It also states that proof of the defendant's possession of such goods, unless explained to the satisfaction of the jury

shall be deemed evidence sufficient to authorize conviction for violation of this section." We have no way of knowing to what extent the jury based its finding upon this unconstitutional inference.

Nor is it relevant that the jury might have had ample circumstantial evidence on which to base a finding of knowledge of illegal importation of cocaine, beyond a reasonable doubt. The due process guarantee of a rational statutory presumption in Leary and Turner may pose a constitutional right "so basic to a fair trial that their infraction can never be treated as harmless error." Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967); see Bollenbach v. United States, 326 U.S. 607, 614–615, 66 S.Ct. 402, 90 L.Ed. 350 (1946). But see United States v. Matalon, 425 F.2d 70 (2d Cir. 1970). But even if the unconstitutional presumption could amount to no more than harmless error in certain circumstances, in the present instance we are unable to say that it was harmless. Appellant might have had knowledge of illegal importation if he had seen the postmark on the parcel, if he understood that the postmark was derived from outside the United States, and if he had reason to know that the importation was illegal. But the government offered no direct evidence to substantiate any of these possibilities, nor did it offer "overwhelming" circumstantial evidence. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). On this record, we are unable to say that the error was harmless beyond a reasonable doubt. Chapman, supra, 386 U.S. at 24, 87 S.Ct. 824.

Reversed and remanded for a new trial.

---

2. Barnes held that since the statutory presumption submitted to the jury satisfied both the Leary "more-likely-than-not" standard as well as the higher "beyond a reasonable doubt" standard, it accorded with due process. In the present case, however, since the statutory presumption as applied to cocaine in small quantities fails to meet even the Leary standard, we need not go on to examine whether the "beyond a reasonable doubt" standard is constitutionally required.