# LAMONT WILLIAM RICKETTS v. STATE OF MARYLAND

[No. 1261, September Term, 1979.]

*Decided July 16, 1980.*

The cause was argued before MORTON, THOMPSON and COUCH, JJ.

*Michael R. Malloy, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Thomas P. Barbera, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Warren B. Duckett, Jr., State's Attorney for Anne Arundel County,* and *Scott Patterson, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

COUCH, J., delivered the opinion of the Court. THOMPSON, J., dissents and files a dissenting opinion at page 418 *infra.*

Lamont William Ricketts, the appellant, was convicted of larceny after a bench trial in the Circuit Court for Anne Arundel County. Judge H. Chester Goudy, Jr. imposed a sentence of ten years. He complains here that the jury trial was not properly waived, that the trial court erred in ruling that the appellant's suitcase was lawfully seized and searched, and that the evidence was insufficient to support his conviction.

Karen Webb, an employee of Avis Rent-A-Car at B.W.I. Airport, testified that on December 16, 1978, she rented a blue Chevrolet Caprice with Virginia tags RDK-199 to a Mr. Jeffers, later identified as the appellant. Michael Bolin testified that he worked for Avis Rent-A-Car at B.W.I. Airport on December 16, 1978. He identified State's Exhibit 3 as the title to a 1979 Chevrolet Caprice with Virginia tags RDK-199. He stated that the return due date for that car was December 23, 1978, which was seven days after the rental. Avis recovered the car in Philadelphia on January 3, 1979 and Maryland State Trooper Robert Raffel was notified that the car had been found. Bolin testified further that on January 18, 1979, he pulled out of the computer a request for a reservation of a Cadillac which was reserved in the same company name, System Design, as had been the blue Chevrolet Caprice. The reservation was made by an individual under the name of L. King. Bolin stated that appellant came to the Avis counter to rent the reserved Cadillac. He identified State's Exhibit 6 as an Avis rental agreement signed by Leonard King.

Trooper Raffel of the Maryland State Police Airport Division, testified that he initiated an investigation into the

possible theft of a blue Chevrolet Caprice which had been rented by a George Jeffers from Avis. He stated that on January 18, 1979, a surveillance was set up in B.W.I. Airport in the immediate area of the Avis counter. He stated that at 7:00 p.m. appellant entered the airport, approached the Avis counter, identified himself as Leonard King, and signed a rental agreement for a 1979 Cadillac which he had reserved. As appellant left the counter with the keys, Raffel "detained" him for investigation for the larceny of the Chevrolet. Appellant was taken to the Airport Division Police Station where his wallet was searched. Trooper Raffel found 12 identification cards in three names. Raffel stated that, at 7:42 p.m., he advised appellant of his *Miranda* rights and appellant waived those rights. He testified that appellant said he was Leonard King but, after being confronted with information obtained from another source, admitted he was Lamont Ricketts.

Raffel further testified that a State Trooper went to the motel where appellant had been staying and seized his luggage. A female companion of appellant who was at the motel was brought to the police station for investigation. Raffel stated that he placed appellant's baggage between himself and appellant, that he asked appellant if he minded if Raffel looked through his bags, and that appellant said he did not mind. Raffel did not tell appellant he had a constitutional right to refuse to let Raffel search his baggage, nor did he tell appellant that the purpose of the search was to find known handwriting exemplars. Appellant had given handwriting exemplars to Trooper James K. Sevick before his baggage was searched but both he and Sevick thought appellant had tried to disguise his normal handwriting. The court overruled appellant's objection to the search of the baggage on the basis of consent.

Trooper Raffel stated that he took from appellant's suitcase a Budget Corporation application form and various other letters, papers, and notebooks, most of which contained handwriting that appellant admitted was his. The seized items, along with the handwriting samples appellant had given to Trooper Sevick and the original rental contract

for the Chevrolet Caprice in the name of George Jeffers, were sent to the State Police for handwriting comparisons.

Detective Sergeant Gary Gurton, a Maryland State Police handwriting expert, testified that the handwriting on the December 16, 1978 rental contract signed by George Jeffers and the handwriting on the exemplars and documents taken from appellant were made by the same person.

## I Jury Trial

The record shows that the following occurred at the beginning of the trial:

> "Mr. Patterson: Your Honor, at this time the State would call criminal number 22,187. State of Maryland vs. Lamont W. Ricketts for the purpose of trial.
>
> Mr. Cochran: Your Honor, Mr. Ricketts is represented by the office of the Public Defender. Mr. Ricketts, would you stand up, sir. Mr. Ricketts, you have told me that you wished to elect a judge trial. That means that we will not have a jury hear your case. A jury would consist of 12 people that would sit over there in that jury box, if in fact the 12 people unanimously agreed as to your guilt or to your innocence, that's the only way a conviction could be arrived at. It takes the unanimous consent of the 12 jurors. Do you understand that, sir?
>
> Mr. Ricketts: . . . .
>
> Mr. Cochran: You have to say yes or no.
>
> Mr. Ricketts: Yes.
>
> Mr. Cochran: Now, do you wish to waive your right to a jury trial and have Judge Goudy try without a jury?
>
> Mr. Ricketts: Yes."

Appellant argues here that this was not a compliance with Md. Rule 735 d which provides as follows:

> "If the defendant elects to be tried by the court,

> the trial of the case on its merits before the court may not proceed until the court determines, after inquiry of the defendant on the record, that the defendant has made his election for a court trial with full knowledge of his right to a jury trial and that he has knowingly and voluntarily waived the right. If the court determines otherwise, it shall give the defendant another election pursuant to this Rule."

He says the rule was not complied with as interpreted by *Countess v. State,* 286 Md. 444, 408 A.2d 1302 (1979), because the trial judge did not advise the appellant that his guilt must be established beyond a reasonable doubt. We agree. It seems to us that the Court of Appeals made clear in *Countess* that the procedure called for by § d of Rule 735 has three aspects: (1) the election; (2) the inquiry; (3) the knowledge necessary for an effective waiver of a trial by jury. It is the latter aspect with which this case is concerned. As can be seen from the colloquy among the appellant, his attorney, and the court, set forth above, there simply is nothing to indicate appellant was made aware that his guilt, whether trial is by a jury or by the court, must be found to be beyond a reasonable doubt. In *Countess,* the Court actually was considering a series of appeals, all dealing with a common problem, *i.e.,* whether there had been compliance with § d of Md. Rule 735. It reached different conclusions in the cases but set out some general principles applicable to all. In part the Court stated:

> "The requirement of § d that the defendant must *'knowingly and voluntarily'* waive the right to a jury trial goes no further than the mandates for a waiver of that right under the constitutions. If the waiver is determined by the court to have been an intentional relinquishment or abandonment of a known right, it meets the test of Rule 735d. For the court to ascertain whether it was a 'known right' which was waived, § d prescribed that the defendant have 'full knowledge of his right to a jury trial.' The defendant-petitioners urge that '[t]he

term "full knowledge" certainly implies understanding of the most salient features of trial by jury, including, at a minimum, the composition of the jury, the jury selection process, and the unanimity requirement.' This goes far beyond what is necessary for a waiver of a jury trial to be constitutionally effective; the Supreme Court has certainly not enunciated such a test. We do not believe that Rule 735 calls for knowledge of all the matters which the defendant-petitioners suggest are essential to a valid election of a court trial. Such detailed information regarding a jury is not indicated. What the Rule contemplates is that the defendant have a basic understanding of the nature of a jury trial. We think that this understanding is generally satisfied when the defendant entitled to a jury trial knows that he has the right to be tried by a jury of 12 persons or by the court without a jury; that whether trial is by a jury or by the court, his guilt must be found to be beyond a reasonable doubt; that in a jury trial all 12 jurors must agree that he is so guilty but in a court trial the judge may so find. These are the matters which the defendant acknowledges he is aware of in the written form of election set out in § b of the Rule in designating his election of court trial or jury trial, and normally they should suffice. We saw no need to go further when we adopted the Rule, and we see no need to add other matters now. *Ordinarily* if the court duly determines that the defendant understands those aspects of a jury trial, he has, under the Rule, 'full knowledge of his right to a jury trial.' " (Emphasis added.)

*Id.* at 455. In our view, what this means is that a trial judge must determine that the defendant understands that he has a right to be tried by a jury of 12 persons or by the court without a jury; that whether trial is by a jury or by the court his guilt must be found to be beyond a reasonable doubt; and that in a jury trial all 12 jurors must agree that he is so

guilty but in a court trial the judge may so find. This view is supported by what the Court stated in that section of the *Countess* opinion where the Court was considering the appeal of John Franklin Fairbanks. The Court there stated in part:

> "Although Fairbanks did indicate on the record that he understood what a jury trial was and that he understood he had the absolute right to a jury trial and wished to waive it, the record disclosed nothing further. *The record is not sufficient to establish that he was aware that 'before a finding of guilty in a jury trial all 12 jurors must find that [he was] guilty beyond a reasonable doubt,' but that in a court trial he could be convicted by the judge alone so finding. Thus, there was not a showing on the record that Fairbanks had the 'full knowledge of his right to a jury trial' contemplated by § d."* (Emphasis added.)

*Id.* at 461. In short, it seems clear the Court of Appeals has set out the minimal requirements that a record must demonstrate in order to show that an accused, in electing a court trial and waiving a jury trial, did so knowingly and voluntarily. *Fairbanks* stands for the proposition that one of those requirements is that the record has to "establish that he was aware that before a finding of guilty in a jury trial all 12 jurors must find that he was guilty beyond a reasonable doubt, but that in a court trial he could be convicted by the judge alone so finding." *Id.* The record in the instant case does not so demonstrate and thus we must reverse.

Since we shall remand this case for a new trial, we deem it advisable to answer appellant's contention that the trial court erred in ruling that the appellant's suitcase was lawfully seized and searched. Furthermore, we must answer his contention that the evidence was insufficient to support his conviction. *Burks v. United States,* 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978).

## II Search

The trial court found that the appellant consented to the

search of his suitcase and we agree. On appeal, appellant attempts to expand his argument to include an alleged illegal seizure at the motel. The objection below was only on the basis that the search of the suitcase was not proper; we shall, therefore, confine our ruling to that particular point. *von Lusch v. State,* 279 Md. 255, 263-4, 368 A.2d 468 (1977). The appellant's argument is based upon failure of the police officers to inform the appellant of the purpose of the search and to advise him of his right to refuse the search. There are no such requirements. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S. Ct. 2041, 2047, 36 L. Ed. 2d 854 (1973). Although both omissions are factors to be considered, they are not controlling. Inasmuch as the handwriting expert identified the exemplars and the signed documents from the suitcase as in the appellant's handwriting, the error, if any, is harmless beyond a reasonable doubt. *Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976).

## III Sufficiency of the Evidence

Appellant argues that there was insufficient evidence to show there was a trespassory taking against the owner's will as required by *Madero v. State,* 31 Md. App. 500, 356 A.2d 604, *cert. denied,* 278 Md. 727 (1976). The evidence showed that the appellant under an assumed name rented a vehicle belonging to Avis, which he failed to return. The vehicle was discovered soon thereafter with its motor removed. From this evidence, especially when it is coupled with evidence of an attempt to secure a second vehicle under a second assumed name, the jury could reasonably infer that the appellant possessed a fraudulent intent at the time he acquired the vehicle and thus there was a trespassory taking. *Shope v. State,* 18 Md. App. 472, 477, 307 A.2d 730, 733 (1973).

> *Convictions reversed; case remanded for a new trial.*
> *Costs are not reallocated as part of the judgment of this court pursuant to Maryland Rule 1082 f.*

*Thompson, J., dissenting:*

It seems a shame that quite a number of criminal trials must be needlessly retried simply because I am unable to persuade at least one of my colleagues to see what appears to me to be a very simple proposition, which is: there is nothing in Md. Rule 735 d or in *Countess v. State, supra,* that requires any mention of reasonable doubt when the meaning of a jury trial is explained to an accused. Inasmuch as an accused's guilt must be proved beyond a reasonable doubt, whether the trial is before the court or before the jury, this language can be omitted without a violation of either the literal language or the purpose of the rule.

It should be noted that in the majority's first quote from *Countess,* the Court was simply explaining what was contained in the waiver form set out in § b of the Rule; the writer, Judge Charles E. Orth, Jr., himself said there was no intention to add anything to the Rule. Nor does the second quote from *Countess* support the majority's position. The *Fairbanks* case cannot be equated with the instant case because in that case there was no explanation whatsoever as to the meaning of a jury trial; the accused simply stated that he knew what a jury trial was.

I would affirm the judgment below.