The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Richard SANTISTEVAN,
Defendant-Appellee.

No. 85SA86.

Supreme Court of Colorado,
En Banc.

March 17, 1986.

Jon Neil Barclay, Dist. Atty., Third Judicial Dist., Franklin D. Azar, Asst. Dist. Atty., Trinidad, for plaintiff-appellant.

Garrett Sheldon, Walsenberg, for defendant-appellee.

DUBOFSKY, Justice.

In this interlocutory proceeding under C.A.R. 4.1, the People appeal from an order of the Las Animas County District Court suppressing certain evidence against the defendant Richard Santistevan in a prosecution for third degree burglary.[1] The evidence suppressed consisted of the results of a police officer's examination of the defendant's hands by means of an ultraviolet light. The district court ruled the ultraviolet light examination unconstitutional as a warrantless nonconsensual search not supported by exigent circumstances. We reverse.

On January 1, 1984, the manager of a motel in Trinidad, Colorado, reported the theft of money from coin-operated laundry machines and vending machines in the motel to an officer of the Trinidad Police Department. In an effort to identify the thief, the officer put fluorescent powder and paste into and around the coin box of one of the machines. The next day, the motel manager notified the police officer that money had again been taken from the machines.

Because the manager and the police officer found coins from the marked machine in the cash register at the front desk of the motel, their suspicions focused on the desk clerks and employees with access to the laundry room. The manager contacted two of the employees and asked them to come to the motel. One other employee and the defendant were already at the motel for their regular work shifts. The assembled

---

1. § 18–4–204, 8 C.R.S. (1978).

employees were asked to place their hands under an ultraviolet light that had been set up by the police officer. The evidence in the record conflicts as to whether the employees were informed by the police officer of the nature or purpose of the investigation and whether the officer advised the employees of their *Miranda* [2] rights before examining their hands. When the defendant, without apparent objection, placed his hands under the ultraviolet light, the police officer discovered traces of fluorescent powder or paste. The officer then gave the defendant a *Miranda* advisement, and, after questioning him in the motel office, permitted him to leave.

On April 25, 1984, a complaint charging the defendant with burglary was filed. Prior to trial the defendant moved to suppress the results of the ultraviolet light examination on the grounds that the examination was not preceded by *Miranda* warnings and that the procedure was an unconstitutional search. The district court granted the motion to suppress.

On appeal the People contend that the examination of the defendant's hands was not a search within the scope of constitutional prohibitions against unreasonable searches and seizures. They further argue that if the district court ruled correctly that the examination was a search, then the defendant voluntarily consented to the search, thereby obviating the need for a warrant. We decide that the police investigative procedure here was a search, but that the court's consideration of whether the defendant consented to the search suggests an improper focus on the defendant's lack of knowledge of the purpose of the ultraviolet light examination.

## I.

Under the fourth amendment to the United States Constitution, "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated." Article II, § 7 of the Colorado Constitution also provides that "[t]he peo-

ple shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures."

As we stated in *People v. Unruh*, 713 P.2d 370, 377 (Colo.1986), when an individual challenges as a search a governmental investigative activity that involves an intrusion into that person's privacy, we must conduct "a two-step inquiry: (1) was the intrusion a search; (2) if so, was it a reasonable search." *See also Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). To answer the first question, we must determine whether the individual had a reasonable expectation of privacy with respect to the governmental intrusion. We conclude on the basis of this analysis that the investigative activity employed by the police officer in the present case constituted a search, a conclusion that finds support in the opinions of other courts.

In *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), the defendant, who was suspected of strangling his wife, was detained at the police station while the police took samples of scrapings from under his fingernails. The samples were analyzed and later introduced as incriminating evidence at the defendant's trial. Although the United States Supreme Court ultimately decided that the taking of the samples was permissible under a recognized exception to the warrant requirement, it held that "the search of the respondent's fingernails went beyond mere 'physical characteristics ... constantly exposed to the public,' ... and constituted the type of 'severe, though brief, intrusion upon cherished personal security' that is subject to constitutional scrutiny." *Id.* at 295, 93 S.Ct. at 2003 (citations omitted). Similarly, in the present case, the examination of Santistevan's hands with an ultraviolet light went beyond the type of exposure to which, in the absence of governmental interference, persons are subjected each day. As did the defendant in *Cupp v. Murphy*, Santistevan had a reasonable ex-

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct.    1602, 16 L.Ed.2d 694 (1966).

pectation of privacy from an ultraviolet light examination of the substances present on his hands, the incriminating character of which was not evident to the naked eye. *See* 1 W. LaFave, *Search and Seizure* §§ 2.2, 2.6 (1978); *see also State v. Howell,* 524 S.W.2d 11 (Mo.1975) (swabbing of defendant's hands with solution that allowed police officers to determine that defendant recently had fired a gun was a search).

Another court, faced directly with the question of whether the use of an ultraviolet lamp to examine a suspect's hands constituted a search, stated that "[t]here can be little doubt that an inspection of one's hands, under an ultraviolet lamp, is the kind of governmental intrusion into one's private domain that is protected by the Fourth Amendment." *United States v. Kenaan,* 496 F.2d 181, 182 (1st Cir.1974). The defendant in *Kenaan* was arrested after an ultraviolet lamp exposed traces of fluorescent powder on his hands, indicating that he had handled a parcel that previously had been dusted with fluorescent powder and contained cocaine. The court in *Kenaan* concluded that "the reach of the Fourth Amendment ... should certainly encompass a detailed inspection, by special instrument, of one's skin." *Id.* (footnote omitted).[3] We agree with the reasoning in *Kenaan* and hold that a person has a reasonable expectation that police officers will not subject his hands to an ultraviolet lamp examination to discover incriminating evidence not otherwise observable and that requiring a person to submit to an ultraviolet lamp examination constitutes a search.

**3.** Other courts have reached contrary conclusions. *See United States v. Richardson,* 388 F.2d 842 (6th Cir.1968); *United States v. DeMarsh,* 360 F.Supp. 132 (E.D.Wis.1973); *United States v. Millen,* 338 F.Supp. 747 (E.D.Wis.1972); *Commonwealth v. DeWitt,* 226 Pa.Super. 372, 314 A.2d 27 (1973).

**4.** Another exception to the warrant requirement is the situation in which probable cause exists to conduct the search and there is a risk that evidence will be lost or destroyed if the search is delayed. *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); *People v. Gomez,* 632 P.2d 586 (Colo.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655

II.

Because we conclude that the governmental activity here constituted a search, we must determine whether the search was reasonable. *People v. Unruh,* 713 P.2d at 377. A search conducted without prior judicial approval is *per se* unreasonable unless the search fits within an established exception to the warrant requirement. *Katz v. United States,* 389 U.S. at 357, 88 S.Ct. at 514; *People v. Unruh,* 713 P.2d at 377.

One of the exceptions to the warrant requirement, and the only one offered by the People as applicable to this case, is consent to the search.[4] A police officer may search for incriminating evidence when the person to be searched voluntarily consents. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Consent is voluntary when it is the product of free and unconstrained choice and not the result of force, threat, or promise, express or implied. *Id.; People v. Elkhatib,* 632 P.2d 275 (Colo.1981). Voluntariness is a question of fact to be determined from the totality of circumstances, and factors to be considered include the age, education and intelligence of the person consenting to the search; the duration, location, and other circumstances of the search; and the consenting person's state of mind. *People v. Carlson,* 677 P.2d 310, 318 (Colo.1984); *People v. Helm,* 633 P.2d 1071 (Colo.1981). The prosecution has the burden to prove voluntariness by clear and convincing evidence. *Carlson,* 677 P.2d at 318; *Helm,* 633 P.2d at 1077.

(1982). Here, the district court concluded that the People did not establish probable cause to conduct the search in the first instance. Moreover, the People did not introduce evidence that might establish exigent circumstances such as proof that fluorescent powder may be easily washed off hands or proof that the powder remains on hands for a limited time only. Although we can conceive of situations in which an ultraviolet light examination may be conducted without the necessity of first obtaining a search warrant, in this case the People made no effort to claim or establish exigent circumstances.

In asking us to overturn the district court's ruling that the evidence was "not sufficient to establish that the defendant voluntarily consented to the search," the People note that the defendant, age 21 and a high school graduate, testified that he put his hands under the light voluntarily, and that he was not threatened in order to obtain his consent. Although the district court concluded that the evidence was not sufficient to establish voluntary consent, the only specific finding supporting the court's conclusion was that the defendant "was not told the purpose for which he was being asked to perform this act." Thus, the district court's ruling turns on the defendant's lack of knowledge of the purpose of the search.

No case in Colorado directly addresses the question of whether knowledge of the purpose of a search is a prerequisite to establishing the voluntary character of the consent to search. However, we have held that although the suspect's knowledge of a right to refuse consent is a factor to be taken into account, such knowledge is not a prerequisite to establishing the voluntary character of a consent search. *Schneckloth*, 412 U.S. at 248–49, 93 S.Ct. at 2058–59; *Helm*, 633 P.2d at 1077; *People v. Elkhatib*, 632 P.2d 275, 278 (Colo.1981); *People v. Hayhurst*, 194 Colo. 292, 571 P.2d 721 (1977). Similarly, the clear lesson of cases from other jurisdictions is that while misrepresentation by the police about the purpose of a search may weigh against a finding of consent, *see, e.g., Alexander v. United States*, 390 F.2d 101 (5th Cir.1968), and while a defendant's knowledge of the purpose of a search may be indicative of consent, *see, e.g., United States v. Bailey*, 447 F.2d 735 (5th Cir.1971), such knowledge is not a prerequisite of voluntary consent to a search. *See, e.g., Ricketts v. State*, 46 Md.App. 410, 417 A.2d 465 (1980), *aff'd* 290 Md. 287, 429 A.2d 1025 (1981). We therefore conclude that knowledge of the purpose of a search is but one of the many factors to be considered by a trial court in determining whether a search was justified on the ground of consent.

The evidence in this case, as the People note, presents a number of factors that would support a finding that the defendant consented to the search of his hands. These factors include the defendant's age, intelligence and education; the absence of promises, threats or other overbearing conduct on the part of the police officer; and the absence of any misrepresentation as to the purpose of the search.

There is, of course, evidence that militates against a finding of valid consent. In determining that the defendant did not voluntarily consent to the search the district court properly could take into account, among other things, the failure of the police to inform the defendant of the purpose of the search or of his right to refuse to be searched. We recognize that the district court is in the best position to weigh the competing considerations involved in the determination whether the search at issue in this case was consensual. However, because it appears that the district court gave undue significance to the defendant's lack of knowledge of the purpose of the search, to the exclusion of other relevant factors, we reverse the district court's finding that the defendant did not consent to the search and remand the case to the district court for reconsideration of this issue.

The judgment of the district court is reversed and the cause is remanded for proceedings in accordance with this opinion.

ERICKSON, J., dissents.

ROVIRA and VOLLACK, JJ., join in the dissent.

ERICKSON, Justice, dissenting:

I respectfully dissent. In my view, the employment of an ultraviolet light to determine the presence of fluorescent materials on the hands of a suspect does not constitute an invasion of a protected privacy interest or a search under the fourth amendment to the United States Constitution or article II, section 7 of the Colorado Constitution. I would therefore hold, along with

the majority of other courts, that illumination by ultraviolet light is not a search.

To determine what constitutes a "search," we look first to the privacy interest defined in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In *Katz*, telephone conversations by the defendant were overheard by police officers who had attached an electronic listening device (a detectaphone) to the exterior of a public telephone booth used by the defendant. In holding that electronic surveillance by the officers constituted a fourth amendment search, the Court abandoned the traditional view that a search requires a physical intrusion into a constitutionally protected area. The Court declared that "the Fourth Amendment protects people, not places," and concluded:

> The Government's activities in electronically listening to and recording the petitioner's words violated the privacy upon which he justifiably relied while using the telephone booth and thus constituted a "search and seizure" within the meaning of the Fourth Amendment. The fact that the electronic device employed to achieve that end did not happen to penetrate the wall of the booth can have no constitutional significance.

389 U.S. at 353, 88 S.Ct. at 512. The test that emerged from *Katz* for determining the existence of a search was whether the intrusion violated a reasonable expectation of privacy possessed by the aggrieved party. *Id.* at 360, 88 S.Ct. at 516 (Harlan, J., concurring); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We have employed the *Katz* test to determine whether a search occurred under the United States or Colorado Constitution in a long line of cases. *See, e.g., People v. Unruh*, 713 P.2d 370 (Colo.1986); *People v. Oates*, 698 P.2d 811 (Colo.1985); *People v. Carlson*, 677 P.2d 310 (Colo.1984); *People v. Sporleder*, 666 P.2d 135 (Colo.1983).

It is well established that an observation by a lawfully positioned officer using his natural senses of sight, smell, and hearing does not constitute a search. Nor does the use of artificial illumination to enable the officer to see that which he would otherwise be unable to detect because of darkness amount to a search. *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *People v. Shriver*, 186 Colo. 405, 528 P.2d 242 (1974). The rationale underlying these principles is that a person can have no reasonable expectation of privacy in something he knowingly exposes to public view. *Katz*, 389 U.S. at 347, 88 S.Ct. at 507. The same type of reasoning has caused the Supreme Court to conclude that the observation of a person's physical characteristics is not a search. *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) (defendant had no reasonable expectation of privacy in the sound of his voice); *United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973) (defendant had no reasonable expectation of privacy in the physical characteristics of his handwriting).

In *Commonwealth v. DeWitt*, 226 Pa.Super. 372, 314 A.2d 27 (1973), the leading case on the issue before us, the court relied on the similarity between physical characteristics and the presence of fluorescent material on a suspect's hand in holding that illumination by ultraviolet light does not constitute a search. The court said:

> [D]efendants had no reasonable expectation of privacy as to the presence of foreign matter on their hands independent of the expectation of the privacy of their premises, which had been legitimately invaded by the police. The [fluorescent] grease may be compared to a fingerprint or one's voice, which is "constantly exposed to the public." *United States v. Dionisio*.... The Fourth Amendment provides no protection for what "a person knowingly exposes to the public." *Katz v. United States* .... It is true that the grease could not be detected with the naked eye, but then, neither may a fingerprint be examined until there has been an application of ink.

314 A.2d at 30–31. All but one of the courts to have addressed the issue have agreed that illumination by ultraviolet light does not constitute a search. *See United*

*States v. Richardson,* 388 F.2d 842 (6th Cir.1968); *United States v. DeMarsh,* 360 F.Supp. 132 (E.D.Wis.1973); *United States v. Millen,* 338 F.Supp. 747 (E.D.Wis.1972); *but see United States v. Kenaan,* 496 F.2d 181 (1st Cir.1974).

The majority rejects the prevailing view, relying on *Cupp v. Murphy,* 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1969). In *Cupp,* the defendant's wife was found strangled to death in her home. When the defendant voluntarily went to the police station for questioning, the police, suspecting that a dark spot on the defendant's finger might be the victim's dried blood, took a scraping from his fingernail under his protest. The Supreme Court held that the scraping constituted a search, stating:

> Unlike the fingerprinting in *Davis [v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969) ], the voice exemplar obtained in *United States v. Dionisio* ... or the handwriting exemplar obtained in *United State v. Mara* ... the search of respondent's fingernails went beyond mere 'physical characteristics ... constantly exposed to the public,' ... and constituted the type of 'severe, though brief, intrusion upon cherished personal security' that is subject to constitutional scrutiny.

412 U.S. at 295, 93 S.Ct. at 2003 (citations omitted). The majority suggests that *Cupp* stands for the proposition that an individual has a reasonable expectation of privacy in the material on his hands which is not incriminating to the naked eye. The majority therefore concludes that illumination of a person's hand by an ultraviolet light constitutes a search because the fluorescent material is invisible to the naked eye.

In my view, relying on *Cupp* to conclude that the use of an ultraviolet light is a search ignores more recent decisions of the Supreme Court holding that the employment of various forms of sense-enhancing devices in the investigation of criminal activity does not constitute a search. In *Texas v. Brown,* 460 U.S. at 730, 103 S.Ct. at 1535, the Court held that the use of a flashlight to illuminate a darkened area is not a search. The same term the Court

declared that subjecting luggage to a "canine sniff" by a trained narcotics detection dog at an airport does not constitute a search. *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *but cf. People v. Unruh,* 713 P.2d 370 (Colo.1986) (canine sniff of safe being held at police station as evidence in burglary case violated owner's reasonable expectation of privacy). The Court in *Place* reasoned that "the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item." 462 U.S. at 707, 103 S.Ct. at 2644. The Court relied on *Place* in *United States v. Jacobsen,* 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), to conclude that the use of a chemical field test to determine whether a suspected substance was cocaine was not a search. The Court observed that the field test, like the canine sniff, could only disclose the presence or absence of contraband. No other information was obtained by virtue of the test.

I believe that the decisions in *Brown, Place,* and *Jacobsen* support the general principle that "[n]othing in the Fourth Amendment prohibit[s] the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afford[ ] them...." *United States v. Knotts,* 460 U.S. 276, 282, 103 S.Ct. 1081, 1085, 75 L.Ed.2d 55 (1983). The intrusion in this case was no greater than that occasioned by the use of a flashlight by a lawfully positioned officer. *See DeWitt,* 314 A.2d at 31. Furthermore, illumination by ultraviolet light is not significantly different than a canine sniff or a chemical field test. Each device reveals extremely limited information about the suspect or his possessions. The canine sniff and the chemical field test can only disclose the presence of contraband, and the ultraviolet light can only reveal that the suspect has handled items treated with fluorescent materials. Investigating officers learn no other private facts about the suspect by using these devices. Thus, contrary to the reasoning of

the majority, by no stretch of the imagination does illumination by ultraviolet light amount to " 'a detailed inspection, by special instrument, of one's skin.' " Maj. op. at 795, quoting *United States v. Kenaan,* 496 F.2d 181, 182 (1st Cir.1974) (the only case holding that illumination by ultraviolet light constitutes a search). It certainly cannot be said that an individual has a protected privacy interest in preventing the police from discovering incriminating evidence. *See United States v. Jacobsen,* 466 U.S. at 122, 104 S.Ct. at 1661 ("The concept of an interest in privacy that society is prepared to recognize as reasonable is, by its very nature, critically different from the mere expectation, however well justified, that certain facts will not come to the attention of the authorities.") (footnote omitted).

Accordingly, I would hold that the investigative procedure employed in this case was not a search and that the consent of the defendant was irrelevant. I would therefore reverse the suppression order of the district court and remand the case for further proceedings.

I am authorized to say that Justice ROVIRA and Justice VOLLACK join in this dissent.