704 P.2d 255

**The STATE of Arizona, Appellee,**

v.

**George Robert ALDER, Appellant.**

**No. 2 CA–CR 3210.**

Court of Appeals of Arizona,
Division 2.

Jan. 28, 1985.

Review Denied April 16, 1985.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Georgia B. Ellexson, Phoenix, for appellee.

Frederic J. Dardis, Pima County Public Defender by Frank P. Leto, Tucson, for appellant.

## OPINION

**HOWARD, Judge.**

Appellant was charged by indictment with three counts of child molestation, two counts of sexual abuse and two counts of sexual exploitation of a minor. The state also filed allegations of prior convictions, to-wit: Counts I and II of the indictment as prior convictions to Counts III and IV, and Counts I through IV as prior convictions to Counts V through VII. Appellant was convicted by a jury on five counts (Counts II, III, IV, V and VII), and sentenced to concurrent sentences of 2, 10.5, 3, 15.75 and 15.75 years, with credit for 254 days of pretrial incarceration. Appellant contends (1) that the trial court erred in denying his motion to suppress statements he made to the police because the statements were obtained as a result of an illegal warrantless arrest in violation of the Fourth Amendment; (2) that the trial court erred in denying his motion to suppress evidence seized from his apartment because the warrant authorizing the search was a general warrant; (3) that the court erred in failing to grant his motion to continue and in granting the state's motion to preclude the defense of insanity; (4) that he was denied a fair trial as a result of prosecutorial misconduct; and (5) that the trial court improperly sentenced him as a repetitive offender, denying him the right to a jury determination of his previous convictions. We affirm.

Responding to a call from an elementary school, the police interviewed the 10-year-old female victim and her mother and learned from them that the 10-year-old had been sexually molested by appellant, who was the manager of the apartment complex in which they lived. The police then went to the apartment complex with the intent to question and arrest appellant. One of the officers had a tape recorder at the time, and it disclosed the following conversation which occurred when the three uniformed policemen encountered appellant outside of his apartment:

"Q. Hey how are you doing? Are you Mr. Alder?

A. Ya.

Q. I'm Officer Widmer.

A. Ya.

Q. This is Officer Cota and Sergeant Nunley. We would like to talk to you sir about an investigation that we are involved in right now.

A. Okay.

Q. Would it be better to step inside the office?

A. Sure.

Q. This is your home to [sic] is that correct?

A. Um huh, that's correct."

Appellant and the officers entered the apartment, and after appellant was read his *Miranda* rights, he was interrogated. In response to questioning by Officer Widmer, appellant admitted the conduct in question.

On the day after appellant's arrest, the police, armed with a search warrant, searched his apartment. The search warrant authorized the officers to search for the following property:

"1. Photos of nude females.

2. Books or magazines, pornographic in nature.

3. Movies, pornographic in nature.

4. Any other instrumentalities or fruits of the crime...."

The entire apartment was searched from "top to bottom." The officers found Polaroid photographs of the victim, posing nude with her genitalia exposed. They also found a picture of appellant lying nude on a bed, with his genitalia exposed. Also seized were six magazines of nude persons, a Polaroid camera, a large quantity of women's clothing, photos of young women's faces and young women in clothes, a Sears catalogue, a vibrator and a mannequin. The mannequin was dressed in a turtleneck sweater, training bra, diaper, nylons and running shorts. The breasts and vaginal area had been painted on the mannequin's body, and the mannequin wore a blond wig and had lipstick on the mouth and fingernail polish on the nails.

The only evidence at trial came from the state. It showed that the victim and her mother had known appellant for a year. His apartment was also an office. A relationship with romantic potential developed between appellant and the victim's mother, but it did not go any further because, according to appellant, he was impotent.

During the summer of 1982, the 10-year-old victim would stay with appellant while her mother was at work because appellant ran the office/apartment air conditioning all day and the mother was trying to save money on utilities for her apartment. The victim testified that after about a month, appellant began to touch her in a sexual way, first by putting his hand under her clothing on her breasts and then between her legs. Appellant also had the victim take off her clothes, and she testified that he touched her vagina with his penis and tried to put it inside but could not do so. He kissed her mouth and her vagina but, according to the victim, there was no penetration of the vagina. The victim further testified that appellant took Polaroid photographs of her, some nude, some not. She also took photos of him, with and without

clothes. Appellant and the victim once talked about a mannequin. Appellant told the victim not to tell her mother about this activity, and for some time she did not. Finally, following a school presentation on child molestation, the victim told her teacher and the lady at the school who was making the presentation that appellant had been molesting her.

Of the evidence that was seized during the search, only the photographs of the victim, the nude photograph of appellant, the mannequin and the Polaroid camera were offered into evidence. Other facts shall be set forth as they pertain to the issues under discussion.

### THE ARREST

No one disagrees that the police had probable cause to arrest appellant. However, it is appellant's contention that because the arrest was made inside appellant's apartment it was invalid because the police did not, prior to securing appellant's consent to enter, inform appellant that they were there to arrest him. We do not agree.

We first note that the circumstances here are not the usual case of the police knocking on the door of a house or apartment in order to secure entry into the house for the purpose of arresting the suspect. Here, the suspect was already outside the premises when the police first encountered him, in a public place, and could have been arrested by the police at that time. Instead they chose to go into his apartment. However, we need not wrestle with this unusual factual situation because we believe the record clearly shows that there was a valid consent to enter into his apartment.

The law governing a warrantless arrest in a person's home is found in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The Fourth Amendment prohibits the police from making a warrantless arrest of a person in his home absent the existence of exigent circumstances justifying entry into the home

or entry by consent. The Wisconsin courts have faced the very same contention that appellant makes here, to-wit: that consent to enter is not valid unless the police first inform the person granting consent that they intend to make an arrest inside the house. In *State v. Rodgers,* 115 Wis.2d 118, 339 N.W.2d 605 (App.1983), rev'd., 119 Wis.2d 102, 349 N.W.2d 453 (1984), the police, who had cause to arrest, went to the defendant's home, where they were met at the door by the defendant's mother. They identified themselves and told the mother they wanted to talk to her son. The police did not tell her that they wanted to arrest him. The mother told them the defendant was seated in the living room on a couch and let them into the house. The police told the defendant they wanted to talk to him, and when he got up he was told he was under arrest. The court of appeals affirmed the trial court's granting of a motion to dismiss, holding that the consent to enter the home was invalid because it was obtained from the defendant's mother by deception since the police did not tell her they intended to arrest the defendant.

The Wisconsin Supreme Court, in a well-reasoned opinion reversed the decision of the court of appeals. See *State v. Rodgers,* 119 Wis.2d 102, 349 N.W.2d 453 (1984). The Wisconsin Supreme Court first observed that its court of appeals had used a *waiver* standard to determine whether the consent was voluntary. In other words, did the mother make a knowing and intelligent waiver of her right to prohibit a warrantless entry? This was the wrong standard. A person must be informed in order to waive a right; however, consent need only be voluntary, in other words, free from coercion or duress, which is determined from the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed. 854 (1973). As was stated in *Schneckloth,* a search case:

> "Our decision today is a narrow one. We hold only that when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that they demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." 93 S.Ct. at 2059.

The Wisconsin Supreme Court quoted to the Maryland case of *In Re Anthony F.,* 293 Md. 146, 442 A.2d 975 (1982) which contained facts almost identical to those in the Wisconsin case. There, the Maryland Court of Appeals held the arrest was valid, finding no merit in the argument that the voluntary character of the permission to enter was destroyed because the police only told the sister that they wanted to talk to her brother. The court stated:

> " 'Regarding the question of a policeman's modus operandi in obtaining consent, the Supreme Court in *Schneckloth* observed that, "two competing concerns must be accommodated in determining the meaning of a 'voluntary' consent— the legitimate need of such [police entry] and the equally important requirement of assuring the absence of coercion." *Schneckloth v. Bustamonte, supra,* 412 U.S. at 227, 93 S.Ct. at 2048. We do not think that the officers' statement of their purpose in this case in any way undermined the voluntary character of the young lady's consent. They did not mask their official capacities, nor did they misrepresent their purpose for being there. Without being explicit, they stated that they wanted to talk with the brother, and the sister sought no further elaboration. Certainly, a policeman has a right to execute his lawful function without gratuitously advertising his every move to anyone he might encounter in that pursuit.' 442 A.2d at 980." 349 N.W.2d at 458 (emphasis in original).

In commenting on the Maryland case, the Wisconsin court stated:

"The reasoning of *Anthony* is sound and realistic. To say it is deception for the officers to state that they wanted to speak to the brother, without advising that they were also there to arrest him, is to apply an unwarranted assumption by using a scrupulous analysis not borne out by the total circumstances, which were that the officers identified themselves, asked whether the defendant was home, even though they could see him from the outside, and asked permission to enter. There was no coercion or misstatement of their authority." 349 N.W.2d at 485.

■ Other authorities have held that consent was voluntary under circumstances similar to those of the Wisconsin case and the instant case. They are: *United States v. Briley*, 726 F.2d 1301 (8th Cir.1984); *United States v. Purham*, 725 F.2d 450 (8th Cir.1984) (where the court stated that the only evidence on the record regarding this issue was testimony from the arresting officers and no express or implied coercion could be found from their testimony); *People v. Bean*, 84 Ill.2d 64, 48 Ill.Dec. 876, 417 N.E.2d 608 (1981) cert. denied 454 U.S. 821, 102 S.Ct. 106, 70 L.Ed.2d 93; *People v. Lane*, 106 Ill.App.3d 793, 62 Ill.Dec. 678, 436 N.E.2d 704 (1982); *People v. Kraman*, 96 Ill.App.3d 390, 51 Ill.Dec. 838, 421 N.E.2d 346 (1981); *People v. Garcia*, 94 Ill.App.3d 940, 50 Ill.Dec. 434, 419 N.E.2d 542 (1981). We do not have here a situation where consent was obtained by means of deceit, such as was true in the case of *State v. Petersen*, 124 Ariz. 336, 604 P.2d 267 (App.1979) (where the police obtained consent from the defendant to search his car by telling him that they were searching for something the previous owner has stashed in the car).[1]

■ In this case, since the state relied upon consent for the entry, it had the burden of proving that the consent was freely and voluntarily given. *Schneckloth v.*

---

[1]. Nor are we dealing here with an undercover police agent's entry. Such an entry, by consent, though obtained by deception, is not prohibited by the Fourth Amendment. *United States v.*

*Bustamonte*, supra. We believe the state sustained the burden in this case. There is not the slightest bit of evidence to show that appellant gave his consent to the entry to his apartment as a result of any implied or explicit coercion or duress.

### THE SEARCH WARRANT

■ Appellant contends that the search warrant was invalid on its face because it failed to particularly describe the items to be seized. We do not agree. The Fourth Amendment requires that the warrant describe the things to be seized with particularity. The purpose of the particularity requirement is to prevent general warrants and writs of assistance of the kind that existed at the time of our founding fathers. See *Stanford v. Texas*, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). Citing our case of *State v. Robinson*, 139 Ariz. 240, 677 P.2d 1348 (App. 1984), appellant contends that the descriptions of the items contained in the search warrant were mere generic descriptions forbidden by the Fourth Amendment. Appellant's reliance on *State v. Robinson*, supra, is misplaced. There we held that a description of items such as "purses, wallets and jewelry," failed to sufficiently describe the items in order to justify a search. That is not the case here. Had the warrant merely authorized a search for photographs, books and movies, then the warrant would have been defective. Here, however, the warrant requires that the photos be of nude females, and that the books, magazines and movies be pornographic in nature.

Pornographic material is material which is obscene. Black's Law Dictionary 1045 (5th ed.1979). Material is obscene, as defined in A.R.S. § 13–3501(2), when

"(a) [t]he average person, applying contemporary state standards would find that the item, taken as a whole, appeals to the prurient interest; and (b) [t]he

*Shigemura*, 682 F.2d 699 (8th Cir.1982), cert. denied 459 U.S. 1111, 103 S.Ct. 741, 74 L.Ed.2d 962 (1983).

item depicts or describes, in a patently offensive way, sexual activity as that term is described herein; and (c) [t]he item[,] taken as a whole, lacks serious literary, artistic, political or scientific value."

We believe the items were described here with enough specificity so that there would be little likelihood of confusion or uncertainty by the executing officer as to the scope of their permissible search. The addition on the face of the warrant of "any other instrumentalities or fruits of the crime" did not give any rights to the executing officers which they did not already have. See *State v. Woratzeck*, 130 Ariz. 499, 637 P.2d 301 (App.1981).

## THE DENIAL OF THE CONTINUANCE

A firm trial date had been set in this case for June 14, 1983. On June 10, long after appellant's counsel had interviewed the prosecution witnesses, appellant filed a motion to continue the trial so he could have appellant examined by Dr. Blender, a psychiatrist, for a *possible* insanity defense. On Monday, the day before trial, appellant untimely disclosed an insanity defense. The trial judge denied the motion for continuance, and in so doing gave defense counsel permission to file something in writing or an affidavit to show what the defense would have been had counsel thought it a valid defense. This was never done.

The next day, just prior to the commencement of the trial, appellant renewed his motion to continue, requesting a one-week continuance, and also told the trial judge, who was not the same judge who denied the motion for continuance, that Dr. Blender was coming from California and was going to evaluate appellant at the jail. The trial court denied the motion for continuance and granted the state's motion to preclude any testimony bearing on an insanity defense.

■ Appellant contends the trial court erred in not granting his motion to continue and in precluding the defense. We do not agree. Appellant's proposed insanity de-

fense was untimely disclosed. Rule 15.-7(a)(4), Rules of Criminal Procedure, 17 A.R.S. provides that in appropriate circumstances the trial court may preclude a party from calling a witness, offering evidence or raising a defense not disclosed. Generally, the choice of an appropriate sanction is left to the sound discretion of the trial court. *State v. Smith*, 123 Ariz. 243, 599 P.2d 199 (1979). The trial court's selection of an appropriate sanction will not be reversed on appeal unless there is a clear showing of abuse of discretion. *State v. Alvarado*, 121 Ariz. 485, 591 P.2d 973 (1979). Preclusion as a sanction should be invoked only when other less stringent sanctions are not applicable to effect the ends of justice. *State v. Smith*, supra. Here, appellant attempted to disclose an entirely new line of defense the day before the trial. Furthermore, appellant was unprepared to disclose any details of that affirmative defense, or whether the expert evaluation would even support a valid insanity defense. There was no showing that the witness, Dr. Blender, was vital to the case. Rather, the record shows a defendant in search of a defense having not yet found a credible defense with the trial only one day away. Counsel having failed to make any offer of proof as to what Dr. Blender's testimony would have been, we are unable to say that the preclusion ruling was prejudicial to appellant. See *State v. Gonzales*, 123 Ariz. 11, 596 P.2d 1183 (App. 1979).

## MISCONDUCT OF THE PROSECUTOR

■ Appellant complains about certain statements made by the prosecutor in his opening and closing arguments. No objections were made, and our review of these statements does not disclose that they caused any miscarriage of justice. In fact, the evidence against appellant in this case was overwhelming. The failure to object to the alleged improper remarks of counsel constituted a waiver of the issue on appeal. *State v. Linden*, 136 Ariz. 129, 664 P.2d 673 (App.1983).

IMPROPER SENTENCING AS A
REPETITIVE OFFENDER

 Pursuant to A.R.S. § 13–604(H) the state alleged as prior convictions those counts pertaining to the early offenses, specifically, Counts I and II as prior convictions to Counts III and IV, and Counts I through IV as prior convictions to Counts V and VII. Appellant was convicted of Counts II, III, IV, V and VII. Count II was designated as non-dangerous, non-repetitive, and the remaining counts as non-dangerous, repetitive. Appellant contends that after the jury returned guilty verdicts on these counts, it then had to go back and deliberate a second time as to whether or not those counts were prior convictions. He bases this argument on A.R.S. § 13–604(K), which allows enhancement for previous convictions if the previous convictions are admitted or found to be true by the trier of fact, and on Rule 19.1(b), Rules of Criminal Procedure, 17 A.R.S., which requires that after the verdict of guilt has been rendered the jury must then try the issue of the prior convictions unless they have previously been admitted. Appellant's argument is absurd and frivolous. Rule 19.1 has no application to prior convictions alleged pursuant to A.R.S. § 13–604(H), which provides, in part, as follows:

> "Convictions for two or more offenses not committed on the same occasion but consolidated for trial purposes may, at the discretion of the state, be counted as prior convictions for purposes of this section."

Affirmed.

BIRDSALL, C.J., and HATHAWAY, J., concur.